IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

TIMOTHY W. TARVER,            )
                             )
        Plaintiff,            )
                             )
    v.                        )        CASE NO. 2:18-CV-1034-WKW
                             )               [WO]
SIBLEY G. REYNOLDS,           )
                             )
        Defendant.            )

## MEMORANDUM OPINION AND ORDER

Plaintiff Timothy Tarver has taken the old schoolhouse adage to heart: "If at first you don't succeed, try, try again." This case started in state court when Timothy divorced Susan Tarver. In a settlement agreement, Timothy agreed to give half of his VA disability benefits to Susan. Judge Sibley G. Reynolds of the Circuit Court of Elmore County is now holding Timothy to his word. Timothy insists that Judge Reynolds cannot do that. But the Alabama Court of Civil Appeals has twice affirmed Judge Reynolds, and the Supreme Court of Alabama denied certiorari both times.

Ever persistent, Timothy wants to make a federal case out of Judge Reynolds's orders. He first tried removing the state action to this court. No dice. Then he filed a new lawsuit against Susan in this court. Ditto. Now he is suing Judge Reynolds under 42 U.S.C. § 1983, challenging Judge Reynolds's judicial decisions. But like Timothy's other federal cases, this one is due to be dismissed.

# I.  JURISDICTION AND VENUE

Timothy invokes federal-question subject-matter jurisdiction under 28 U.S.C. § 1331.  Judge Reynolds argues that, under the *Rooker–Feldman* doctrine, the court lacks jurisdiction.  (The court addresses this issue below.)  The parties do not dispute personal jurisdiction or venue.

# II.  STANDARDS OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint against the legal standard set forth in Rule 8: 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Wilborn v. Jones*, 761 F. App'x 908, 910 (11th Cir. 2019) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) can be either a facial attack or a factual attack.  *Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1237 (11th Cir. 2002).  "If the 12(b)(1) motion represents a facial attack on jurisdiction — that is, the facts as stated supposedly do not provide cause for federal jurisdiction — then the facts alleged by the plaintiff are given the same presumption of truthfulness as they would receive under a 12(b)(6) motion." *Id.*

# III. BACKGROUND

Timothy and Susan Tarver married in 1992. Timothy was in the United States Air Force throughout much of their marriage, though at some point he retired.[1] Then in 2010, Timothy petitioned for a divorce in the Circuit Court of Elmore County, Alabama. (No. DR-362.00, Doc. # 1.)[2] The case was assigned to Judge Reynolds. After some preliminary litigation, Timothy and Susan signed a divorce settlement agreement in May 2012. In that agreement, Timothy agreed to pay Susan half of his retirement benefits, including his Veterans Administration (VA) disability benefits:

> The Husband draws a retirement from the Air Force in the present amount of $3,334.00 per month. He as well receives a veteran's disability in the present amount of $2,070.00 per month. As represented by the Husband, there are no other retirement plans. Therefore, the Wife shall receive 50% of the Air Force retirement and 50% of the disability monies and 50% of the Thrift Savings Benefit Plan. Directly as to the Air Force retirement, the Wife is awarded 50% of the Husband's disposable military retired pay.

(No. DR-362.00, Doc. # 131, at ¶ 14.)

---

[1] The court uses Timothy's and Susan's first names solely to prevent confusion. *See, e.g.*, *Howell v. Howell*, 137 S. Ct. 1400, 1404 (2017) (using first names).

[2] The state court litigation, *Tarver v. Tarver*, has five related case numbers: No. 29-DR-2010-000362.00 (Ala. Cir. Ct. filed Nov. 4, 2010) (No. DR-362.00); No. 29-DR-2010-000362.01 (Ala. Cir. Ct. filed Oct. 2, 2012) (No. DR-362.01); No. 29-DR-2010-000362.02 (Ala. Cir. Ct. filed Nov. 2, 2015) (No. DR-362.02); No. 29-DR-2010-000362.03 (Ala. Cir. Ct. filed July 7, 2016) (No. DR-362.03); and No. 29-DR-2010-000362.04 (Ala. Cir. Ct. filed Dec. 7, 2018) (No. DR-362.04). There are three federal cases: *Tarver v. Tarver*, No. 15-cv-959 (M.D. Ala. filed Dec. 30, 2015); *Tarver v. Tarver*, No. 16-cv-715 (M.D. Ala. filed Aug. 30, 2016); and *Tarver v. Reynolds*, No. 18-cv-1034 (M.D. Ala. filed Dec. 11, 2018). The court takes judicial notice of the documents filed in these cases. *See* Fed. R. Evid. 201(b)(2); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013).

In June 2012, Judge Reynolds "incorporated" Timothy and Susan's settlement agreement into the final divorce decree "as if set out in full within." (No. DR-362.00, Doc. # 141, at ¶ 3.)  A month later, Judge Reynolds once again ordered Timothy to assign half of his retirement benefits to Susan.  In particular, Judge Reynolds ordered Timothy to pay half of "any amounts [he] received . . . in lieu of disposable retired pay, including . . . any amounts waived . . . to receive [VA disability] benefits." (No. DR-362.00, Doc. # 156, at ¶ 15.)  Unfortunately, however, years of litigation would rage over those benefits.

A.     **2012 to 2015: The First Contempt Proceedings**

A few months after the divorce, in October 2012, Susan alleged that Timothy was not giving her half of his VA disability benefits.  She asked Judge Reynolds to hold Timothy in contempt based on his failure to pay.  (No. DR-362.01, Doc. # 1, at ¶ 2.)  In October 2013, Judge Reynolds found that Timothy had underpaid Susan, so he ordered Timothy to follow the settlement agreement.  (No. DR-361.01, Doc. # 65, at ¶¶ 3, 6.)

Timothy responded by arguing that he need not pay Susan any part of his VA disability benefits.  (No. DR-362.01, Doc. # 75, at ¶ 8.)  Timothy insisted that those benefits are "untouchable" as a matter of law.  (No. DR-362.01, Doc. # 90, at 4.)  All the while, Susan alleged, Timothy kept withholding those benefits from her.  (No. DR-362.01, Doc. # 78, at ¶ 3.)

In February 2014, Judge Reynolds reaffirmed Timothy's obligations under the settlement agreement, stating that VA disability benefits were still "due as agreed." (No. DR-362.01, Doc. # 92, at ¶ 6.) Timothy appealed. (No. DR-362.01, Doc. # 99.) But in December 2014, the Alabama Court of Civil Appeals summarily affirmed. *See Tarver v. Tarver*, 194 So. 3d 1000 (Ala. Ct. App. 2014). And in February 2015, the Supreme Court of Alabama denied certiorari. *See Ex parte Tarver*, 210 So. 3d 1101 (Ala. 2015). So in March 2015, Timothy fell subject to a $10,201 judgment. (No. DR-362.01, Docs. # 167, 172, 180.)

**B.      2015 to 2018:  The Second Contempt Proceedings**

In November 2015, Susan once again alleged that Timothy refused to pay her half of his VA disability benefits. And again, she asked Judge Reynolds to hold Timothy in contempt. (No. DR-362.02, Doc. # 1, at ¶ 3.) But this time around, it took two trips to federal court before Judge Reynolds addressed the merits.

The first detour to federal court happened when Timothy removed Susan's contempt petition to this court in December 2015. (No. 15-cv-959, Doc. # 1.) But that case was remanded to state court in March 2016. Because Timothy complained about the effects of a state-court judgment, the court found that it had no jurisdiction. *Tarver v. Tarver*, No. 15-cv-959, 2016 WL 1167245, at *2 (M.D. Ala. Mar. 25, 2016). Undeterred, Timothy sued Susan in this court in August 2016. In that action, Timothy sought a declaratory judgment that he need not pay VA disability benefits

to Susan. (No. 16-cv-715, Doc. # 1.) But just as before, the court found that it lacked jurisdiction because a state-court judgment caused the alleged injuries. *Tarver v. Tarver*, No. 16-cv-715, 2016 WL 7015645, at \*3 (M.D. Ala. Nov. 30, 2016), *motion to vacate denied*, 2017 WL 5515896 (M.D. Ala. Jan. 12, 2017). Timothy appealed to the Eleventh Circuit, but he voluntarily dismissed that appeal in April 2017. (No. 16-cv-715, Docs. # 21, 26.)

Back in state court, Timothy moved to dismiss Susan's contempt petition. He argued that his VA disability benefits were not assignable and that Judge Reynolds lacked jurisdiction. (No. DR-362.02, Doc. # 51, at ¶¶ 3, 6.) Judge Reynolds rejected those arguments in June 2017. (*See* DR-362.02, Doc. # 84.) The same month, Judge Reynolds held Timothy in contempt for failing to pay Susan half of his VA disability benefits. (No. DR-362.02, Doc. # 86, at ¶ 1.) He entered a $27,853 judgment against Timothy and ordered him to make all future payments. (No. DR-362.02, Doc. # 86, at ¶¶ 1–2.)

Timothy appealed. (No. DR-362.02, Docs. # 92.) But the Alabama Court of Civil Appeals summarily affirmed in May 2018, and the Supreme Court of Alabama denied certiorari in September 2018. (No. DR-362.02, Docs. # 150, 151, 152.)

While Timothy's appeal was before the Alabama Court of Civil Appeals, the Circuit Court of Geneva County garnished his bank account. (No. DR-362.02, Docs. # 98, 99, 104, 105.) Timothy moved to stay the garnishment and to recover the

garnished funds. Predictably, he argued that his VA disability benefits were exempt from garnishment. He also argued that he had not received procedural due process (notice and an opportunity to be heard) before the garnishment. (No. DR-362.02, Doc. # 114, at ¶ 5–7; No. DR-362.02, Doc. # 123, at ¶¶ 4, 12–13.) Judge Reynolds granted a stay and released the garnished funds once Timothy posted a supersedeas bond. (No. DR-362.02, Docs. # 126, 141, 143.) But on November 12, 2018, after the Supreme Court of Alabama denied certiorari, Judge Reynolds ordered that Susan receive the supersedeas bond funds. (No. DR-362.02, Doc. # 163, at ¶ 2.)

## C.    <u>2018 to Present: The Third Contempt Proceedings</u>

At the same time he awarded the bond funds to Susan, Judge Reynolds set a hearing for December 12, 2018, on the chance Timothy did not make them available. (No. DR-362.02, Doc. # 163, at ¶ 3.) Just a week later, on November 19, Timothy moved for relief from the many court orders that instruct him to split VA disability benefits with Susan. He argued (yet again) that Judge Reynolds entered those orders without having subject-matter jurisdiction. (No. DR-362.03, Doc. # 29, at 11, 13.) Then on December 7, Susan filed another contempt petition. In addition to alleging that Timothy still refused to pay her any VA disability benefits, Susan also alleged that Timothy had, "by methods of trickery and deceit," taken the supersedeas bond funds from the courthouse. (No. DR-362.04, Doc. # 1, at ¶¶ 3–4.)

On December 11, 2018 — one day before the prescheduled contempt hearing

— Timothy filed this lawsuit against Judge Reynolds. (No. 18-cv-1034, Doc. # 1.) At the same time, he moved in state court to recuse Judge Reynolds. (No. DR-362.03, Doc. # 52.) Judge Reynolds soon continued the December 12 hearing. (No. DR-362.02, Doc. # 169.) Nothing substantive has happened in state court since then.

This action is against Judge Reynolds in his official and individual capacities. Timothy's complaint has seven counts. Count I claims that Judge Reynolds denied Timothy notice and an opportunity to be heard during the garnishment proceedings. Count II is an equal protection claim based on Judge Reynolds's June 2017 judgment and on the garnishment proceedings. Count III is a substantive due process claim that says Judge Reynolds deprived Timothy "of his right to VA disability." (No. 18-cv-1034, Doc. # 1, at 10.) Count IV-A asserts that Judge Reynolds "knowingly and willingly acted in dereliction of his duties."[3] (No. 18-cv-1034, Doc. # 1, at 10.) Count IV-B is for a purported "arbitrary and irrational classification." (No. 18-cv-1034, Doc. # 1, at 11.) Count V is a claim for infliction of emotional distress. And Count VI is titled "unbridled usurpation of jurisdiction." (No. 18-cv-1034, Doc. # 1, at 12.) Timothy prays for injunctive relief, a declaratory judgment, compensatory damages, punitive damages, and attorney's fees. (No. 18-cv-1034, Doc. # 1, at 12–14.)

---

[3] Timothy's complaint has two claims titled "Count IV." (*See* No. 18-cv-1034, Doc. # 1, at 10–11.) The court refers to the first as "Count IV-A" and the second as "Count IV-B."

Judge Reynolds moved to dismiss the complaint (Doc. # 10), and Timothy responded (Doc. # 13). The motion to dismiss is now ripe.

## IV. DISCUSSION

Most of Timothy's case hinges on whether the Circuit Court of Elmore County — and Judge Reynolds in particular — had subject-matter jurisdiction to enter orders about Timothy's VA disability benefits. Because there is subject-matter jurisdiction, Judge Reynolds is immune from Timothy's claims for money damages. And since other remedies are available, Timothy cannot receive declaratory or injunctive relief. Finally, the *Rooker–Feldman* doctrine bars Timothy's claims to the extent that he asks the court to review and reject Judge Reynolds's judgments.

## A. The Circuit Court of Elmore County has subject-matter jurisdiction.

Time and again, Timothy insists that Judge Reynolds acted without subject-matter jurisdiction. That is incorrect.

### 1. *The Circuit Court of Elmore County has subject-matter jurisdiction over domestic relations cases.*

"Jurisdiction," the Supreme Court has aptly observed, "is a word of many, too many, meanings." *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998)). Likewise, the term "subject-matter jurisdiction" is often misused. Properly understood, though, subject-matter jurisdiction concerns "the classes of cases . . . falling within a court's adjudicatory authority." *Id.* at 455; *see also Ft. Bend Cty. v. Davis*, 139 S. Ct. 1843, 1848 (2019)

("the classes of cases a court may entertain"). It "defines the court's authority to hear a given type of case," and "it represents the extent to which a court can rule on the conduct of persons or the status of things." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (cleaned up). Subject-matter jurisdiction does not wax and wane in individual cases based on how the court rules on the merits; it concerns the court's very "*power* to adjudicate" the merits. *Steel Co.*, 523 U.S. at 89.

The Supreme Court of Alabama defines subject-matter jurisdiction in much the same way. It distinguishes "the proper *exercise* of subject-matter jurisdiction [from] the *existence* of subject-matter jurisdiction." *Baldwin Mut. Ins. Co. v. McCain*, 260 So. 3d 801, 809 (Ala. 2018). "The former is an issue of limits on the exercise of power by a court that actually has power over a certain type of case; the latter is an issue of whether the court actually has any power over the type of case at issue, *i.e.*, subject-matter jurisdiction." *Id.* Again, the emphasis is on the "*types* of cases" that the court has the power to decide. *Ex parte Collins*, 84 So. 3d 48, 52 (Ala. 2010) (quoting *Ex parte Seymour*, 946 So. 2d 536, 538 (Ala. 2006)); *see Ex parte Safeway Ins. Co. of Ala., Inc.*, 148 So. 3d 39, 42 (Ala. 2013) ("Jurisdiction of the subject matter is the power to hear and determine cases of the general class to which the proceedings in question belong.") (cleaned up). "Problems with subject-matter jurisdiction arise if, for example, a party files a probate action in a juvenile court, a divorce action in a probate court, or a bankruptcy petition in a circuit court,

because the nature or class of those actions is limited to a particular forum with the authority to handle them." *Ex parte Safeway*, 148 So. 3d at 43. "There are, however, no problems with subject-matter jurisdiction merely because a party files an action that ostensibly lacks a probability of merit." *Id.*

So understood, the Circuit Court of Elmore County — and Judge Reynolds — has subject-matter jurisdiction over the Tarvers' divorce and the related contempt proceedings. A circuit court has broad authority to hear civil cases. Ala. Const. art. VI, § 142(b) ("The circuit court shall exercise general jurisdiction in all cases except as may otherwise be provided by law."); Ala. Code § 12-11-30(1) ("The circuit court shall have exclusive original jurisdiction of all civil actions in which the matter in controversy exceeds ten thousand dollars . . . ."). In particular, it may divorce couples and divide their property. Ala. Code § 30-2-1(a) ("The circuit court has power to divorce persons from the bonds of matrimony . . . ."); *id.* § 30-2-51 (authorizing property division in divorce cases). And a circuit court may find individuals in contempt of court. *Id.* § 12-11-30(5) ("The circuit court may punish contempts . . . ."). Proceedings about whether Timothy must pay half of his VA disability benefits to his ex-wife under a divorce settlement agreement is a type of case that falls within the Circuit Court of Elmore County's jurisdiction.

### 2. *No federal law strips the Circuit Court of Elmore County of subject-matter jurisdiction.*

In response, Timothy relies on federal laws about military retirement and VA

disability benefits. But those laws do not deprive the Circuit Court of Elmore County of subject-matter jurisdiction; they control how the court may exercise jurisdiction.

"The regulation of domestic relations is traditionally the domain of state law." *Hillman v. Maretta*, 569 U.S. 483, 490 (2013). Of course, federal law may preempt state law. But given state law's dominance, Congress must have "positively required by direct enactment that state law be preempted." *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581 (1979) (cleaned up). "A mere conflict in words is not sufficient. State family and family-property law must do major damage to clear and substantial federal interests before the Supremacy Clause will demand that state law be overridden." *Id.* (cleaned up).

In 1981, the Supreme Court held that federal law (as it existed at the time) completely preempted states from treating military retirement pay as divisible marital property. *McCarty v. McCarty*, 453 U.S. 210, 232 (1981). This fit with the practice in Alabama, where courts "refused to treat an award of military retirement benefits either as a property settlement or alimony in gross." *Ex parte Vaughn*, 634 So. 2d 533, 534 (Ala. 1993) (citing *Kabaci v. Kabaci*, 373 So. 2d 1144, 1146 (Ala. Civ. App. 1979)).

But then in 1982, Congress enacted the Uniformed Services Former Spouses' Protection Act (USFSPA), Pub. L. No. 97-252, tit. X, 96 Stat. 718, 730–38 (1982). Under that statute, states may treat "disposable retired pay" as marital property. 10

U.S.C. § 1408(c)(1) (2012).  In other words, the USFSPA "authorizes" state courts "to consider military retirement benefits as marital property . . . subject to equitable division."  *Ex parte Vaughn*, 634 So. 2d at 536.

Still, there is an exception in the USFSPA for at least some VA disability benefits.  The term "disposable retired pay" is defined as a servicemember's "total monthly retired pay," but it excludes "amounts . . . deducted from the retired pay . . . as a result of a waiver of retired pay required by law in order to receive compensation under . . . title 38."  10 U.S.C. § 1408(a)(4)(A)(ii) (2012 & Supp. V).  Under Title 38, a servicemember who gets VA disability benefits must waive a corresponding amount of retirement pay.  38 U.S.C. § 5305 (2012).[4]  So as the Supreme Court held in *Mansell v. Mansell*, the USFSPA "does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits."  490 U.S. 581, 594–95 (1989).  Federal law preempts state law in that respect.  *See Howell v. Howell*, 137 S. Ct. 1400, 1406 (2017).  Plus, federal law provides that VA disability benefits cannot be assigned or seized except as permitted by federal law.  38 U.S.C. § 5301(a)(1) (2012).  As a result, state courts generally cannot treat VA disability benefits as divisible property in divorce cases.  *See Ex parte Billeck*, 777 So. 2d 105, 107–09 (Ala. 2010); *Stone*

---

[4]  VA disability benefits are tax-exempt, so many servicemembers waive retirement pay to get disability benefits.  26 U.S.C. § 104(a)(4) (2012 & Supp. V); 38 U.S.C. § 5301(a)(1) (2012).

*v. Stone*, 26 So. 3d 1232, 1238 (Ala. Civ. App. 2009).

But the question in this case is not whether it is correct to divide VA disability benefits upon divorce. Instead, the issue is whether a purported violation of that rule strips courts of subject-matter jurisdiction. It does not. State courts do, in a general sense, lack power to violate federal law. But that is different from lacking subject-matter jurisdiction over a dispute. No court has the power to violate federal law, but not every legal error affects subject-matter jurisdiction. The Alabama cases that Timothy cites do not say otherwise; they do not mention restrictions on subject-matter jurisdiction. *See Brown v. Brown*, 260 So. 3d 851, 858 (Ala. Civ. App. 2018); *Swindle v. Swindle*, 204 So. 3d 430, 435–36 (Ala. Civ. App. 2016); *Nelms v. Nelms*, 99 So. 3d 1228, 1232–33 (Ala. Civ. App. 2012).

Other jurisdictions concur that the USFSPA does not restrict subject-matter jurisdiction. *See, e.g.*, *Gross v. Wilson*, 424 P.3d 390, 397 & n.34 (Alaska 2018); *In re Marriage of Williams*, 417 P.3d 1033, 1044 (Kan. 2018); *Moore v. Moore*, 484 S.W.3d 386, 391–92 (Mo. Ct. App. 2016); *Mitchell v. Lynch*, No. 1-CA-CV-08-380, 2009 WL 888647, at *3 (Ariz. Ct. App. Apr. 2, 2009); *Coon v. Coon*, 614 S.E.2d 616, 617–18 (S.C. 2005); *McLellan v. McLellan*, 533 S.E.2d 635, 637 (Va. Ct. App. 2000); *In re Marriage of Curtis*, 9 Cal. Rptr. 2d 145, 151 (Ct. App. 1992); *Maxwell v. Maxwell*, 796 P.2d 403, 407 (Utah Ct. App. 1990); *Evans v. Evans*, 541 A.2d 648, 652 (Md. Ct. Spec. App. 1988); *Konzen v. Konzen*, 693 P.2d 97, 99 (Wash. 1985)

(en banc).  Given these authorities, Timothy is wrong when he says "all states" have ruled that the USFSPA "deprives" courts of subject-matter jurisdiction over VA disability benefits.[5]  (No. 18-cv-1034, Doc. # 13, at 11.)  In fact, on remand from the Supreme Court's decision in *Mansell*, the state court took care to note that it had subject-matter jurisdiction.  *See In re Marriage of Mansell*, 265 Cal. Rptr. 227, 232–33 (Ct. App. 1989), *cert. denied*, 498 U.S. 806 (1990).  The Circuit Court of Elmore County — and Judge Reynolds — therefore has subject-matter jurisdiction.

**B.**     **Judge Reynolds is immune against Timothy's claim for money damages.**

Timothy is suing Judge Reynolds in his individual capacity for compensatory and punitive damages.  But Judge Reynolds is entitled to absolute immunity against those claims.

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction," *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967), and the Supreme Court formally endorsed that doctrine almost a century-and-a-half ago, *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871).  Judicial immunity has long applied in § 1983 cases, *Pierson*, 386 U.S. at 554, and it even shields against nominal damages, *see Simmons v. Conger*, 86 F.3d 1080, 1084–85 (11th Cir. 1996).

---

[5] Only a few decisions plainly treat the USFSPA as restricting subject-matter jurisdiction. *See Naples v. Naples*, 967 So. 2d 944, 946 & n.1 (Fla. Dist. Ct. App. 2007); *In re Marriage of Pierce*, 982 P.2d 995, 998 (Kan. Ct. App. 1999); *Ryan v. Ryan*, 600 N.W.2d 739, 745 (Neb. 1999).

"Judicial immunity is an absolute immunity; it applies even where a judge acts maliciously." *Harris v. Deveaux*, 780 F.2d 911, 914 (11th Cir. 1986) (citing *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)). Judges lose this immunity "in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune from actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (per curiam) (cleaned up); *see Dykes v. Hosemann*, 776 F.2d 942, 945 (11th Cir. 1985) (en banc) (per curiam).

Timothy does not dispute that Judge Reynolds acted in his judicial capacity. (No. 18-cv-1034, Doc. # 13, at 9.) Nor could he; issuing orders in a pending case is a quintessential judicial function. Timothy instead insists that Judge Reynolds acted "in the complete absence of all jurisdiction." But that "rare circumstance" does not exist here. *McCullough v. Finley*, 907 F.3d 1324, 1332 (11th Cir. 2018).

Whether Judge Reynolds acted in the complete absence of all jurisdiction is a question about subject-matter jurisdiction. *Dykes*, 776 F.2d at 950. And to see if a judge acted in the complete absence of all jurisdiction, the Eleventh Circuit looks at statutory authority at a high level of generality. If state law grants authority over the type of case, the judge has absolute immunity. In *Scott v. Hayes*, for example, it was enough that a state court "had jurisdiction over all civil cases," "had jurisdiction over divorce cases," and had "discretion over the division of the marital estate." 719 F.2d

1562, 1566 (11th Cir. 1983) (cleaned up). That was all the specificity needed to find immunity. *See also, e.g.*, *Stump*, 435 U.S. at 357–58; *McCullough*, 907 F.3d at 1332; *Harris*, 780 F.2d at 916; *Dykes*, 776 F.2d at 946–47.

It should therefore come as no surprise that Judge Reynolds does not lose his immunity if, by chance, he makes an erroneous determination. It does not matter if he made "grave procedural errors," *Stump*, 435 U.S. at 359, or even "undoubtedly egregiously erred," *Scott*, 719 F.2d at 1567. The "power to make that determination" is what matters. *Dykes*, 776 F.2d at 947; *see Mireles*, 502 U.S. at 13.

As explained above, Judge Reynolds has subject-matter jurisdiction over the Tarvers' divorce, the division of their property, and the contempt proceedings. Thus, Judge Reynolds is immune from Timothy's claims for money damages.

## C.   Timothy cannot receive injunctive or declaratory relief.

In addition to money damages, Timothy prays for declaratory and injunctive relief. But that relief cannot be granted for two reasons.

First, federal law provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983 (2012). This creates a clear rule: "Where a plaintiff does not allege and the record does not suggest that the judicial defendant violated a declaratory decree or that declaratory relief was unavailable, judicial immunity

requires dismissal of claims against judicial officers for actions taken in their judicial capacity even when the claims seek prospective injunctive relief." *Kuhn v. Thompson*, 304 F. Supp. 2d 1313, 1322–23 (M.D. Ala. 2004); *see also Machetta v. Moren*, 726 F. App'x 219, 220 (5th Cir. 2018) (per curiam) (dismissing a claim for injunctive relief when plaintiffs failed to allege that a declaratory decree was violated or that declaratory relief was unavailable); *Roth v. King*, 449 F.3d 1272, 1286–87 (D.C. Cir. 2006) (same); *Azubuko v. Royal*, 443 F.3d 302, 304 (3d Cir. 2006) (same); *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (same).

There is no indication that Judge Reynolds violated a declaratory decree. Nor is there any evidence that declaratory relief is unavailable. Indeed, Timothy himself prays for a declaratory judgment. (No. 18-cv-1034, Doc. # 1, at 13.) That is enough to bar his claim for injunctive relief. *Esensoy v. McMillan*, No. 06-12580, 2007 WL 257342, at *1 n.5 (11th Cir. Jan. 31, 2007) (per curiam); *Kuhn*, 304 F. Supp. 2d at 1322 & n.11; *Deters v. Ky. Bar Ass'n*, 130 F. Supp. 3d 1038, 1048 (E.D. Ky. 2015), *aff'd*, 646 F. App'x 468 (6th Cir. 2016). Further, the chance to appeal to the Alabama Court of Civil Appeals, the Supreme Court of Alabama, and the United States Supreme Court may also be enough to dismiss Timothy's claim for injunctive relief. *See William Penn Apts. v. D.C. Court of Appeals*, 39 F. Supp. 3d 11, 18–19 (D.D.C. 2014); *Hoai v. Superior Court of D.C.*, 539 F. Supp. 2d 432, 435 (D.D.C. 2008), *aff'd*, 344 F. App'x 620 (D.C. Cir. 2009) (per curiam).

Second, "to receive declaratory or injunctive relief," Timothy must show "the absence of an adequate remedy at law." *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (per curiam); *see Newman v. Alabama*, 683 F.2d 1312, 1319 (11th Cir. 1982). Yet Timothy fails to allege that he lacks an adequate remedy at law. Indeed, the state court appeals process is, by itself, an adequate legal remedy for Timothy's alleged injuries. *See Sibley v. Lando*, 437 F.3d 1067, 1074 (11th Cir. 2005) (per curiam) (holding that a plaintiff was "ineligible for equitable relief because he had access to the appellate process, a remedy at law," and thus could not maintain a claim for declaratory relief against judges); *see also, e.g.*, *Jones v. CitiMortgage, Inc.*, 666 F. App'x 766, 777 (11th Cir. 2016) (per curiam) (similar); *Wells v. Miller*, 652 F. App'x 874, 875 (11th Cir. 2016) (per curiam) (similar). That appeals process is open to Timothy, and he has used it twice. As a result, Timothy cannot receive declaratory or injunctive relief.

## D. The *Rooker–Feldman* doctrine prevents this court from rejecting orders from the Circuit Court of Elmore County.

The Supreme Court has the authority to review state court judgments, *see* 28 U.S.C. § 1257(a), but federal district courts have no such appellate jurisdiction. By implication, federal district courts cannot hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280,

284 (2005). This is called the *Rooker–Feldman* doctrine, after the cases that first recognized it: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–17 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482–86 (1983).

The *Rooker–Feldman* doctrine applies when a claim either (1) was "actually adjudicated by a state court" or (2) is "inextricably intertwined" with a state court judgment. *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1286 (11th Cir. 2018). A claim is "inextricably intertwined" with a state court judgment if (1) "the success of the federal claim would effectively nullify the state court judgment" or (2) "the federal claim would succeed only to the extent that the state court wrongly decided the issues." *Alvarez v. Att'y Gen. for the State of Fla.*, 679 F.3d 1257, 1262–63 (11th Cir. 2012) (cleaned up). Once state court litigation ends, a plaintiff cannot attack a state court judgment in federal court with arguments that he or she had a reasonable opportunity to raise in state court. *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (per curiam); *Nicholson v. Shafe*, 558 F.3d 1266, 1275 (11th Cir. 2009).

So to the extent that Timothy seeks to relitigate the state court orders requiring him to pay half of his VA disability benefits to Susan, he cannot do so in federal court. He has already appealed those orders in state court — twice. He cannot try again here.

Timothy asserts that *Rooker–Feldman* does not apply in § 1983 cases. (No.

18-cv-1034, Doc. # 13, at 13, 17.)  That is not correct.  The Eleventh Circuit has

repeatedly applied it in § 1983 actions involving Fourteenth Amendment challenges

to domestic relations proceedings.  *See Liedel v. Juvenile Court of Madison Cty.*,

891 F.2d 1542, 1545 (11th Cir. 1990); *Staley v. Ledbetter*, 837 F.2d 1016, 1017 (11th

Cir. 1988) (per curiam).  The Eleventh Circuit has also applied it in cases about the

USFSPA.  *See McSparin v. McSparin*, 489 F. App'x 348, 351 (11th Cir. 2012) (per

curiam); *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996).

Timothy also draws a distinction "between seeking appellate review of a state

court's judgment in federal district court and seeking an injunction enjoining

enforcement of a state court judgment."  (No. 18-cv-1034, Doc. # 13, at 16.)  But

that argument fails.  Timothy relies solely on *Rhoades v. Penfold*, 694 F.2d 1043,

1047 (5th Cir. 1983), which in turn relied only on *Gresham Park Community

Organization v. Howell*, 652 F.2d 1227, 1236 (5th Cir. Unit B Aug. 1981).  Those

two decisions predate *Feldman*, and the Eleventh Circuit later overruled *Gresham* in

light of *Feldman*.  *See Wood v. Orange Cty.*, 715 F.2d 1543, 1546 (11th Cir. 1983);

*see also Blue Cross & Blue Shield of Md., Inc. v. Weiner*, 868 F.2d 1550, 1556 (11th

Cir. 1989) ("Relying on *Feldman* . . . this court expressly abandoned *Gresham*'s

restrictive interpretation of *Rooker*.").  Now courts look at "the issues involved in

the state court proceeding, instead of on the type of relief sought by the plaintiff."

*Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1333 (11th Cir. 2001); *cf. Doe*

*v. The Fla. Bar*, 630 F.3d 1336, 1341 (11th Cir. 2011) ("As the Supreme Court made clear in *Feldman*, the form of a proceeding is not significant, because it is the nature and effect which is controlling.") (cleaned up).

Finally, Timothy says that if a complaint "alleges blatant violations of federal regulations, the federal court is unlikely" to apply *Rooker–Feldman*. (No. 18-cv-1034, Doc. # 13, at 17.) But the cases he cites for that surprising proposition turn out to say something else. One line of cases says that if state law permits a collateral attack on a judgment, *Rooker–Feldman* does not apply. *Davis v. Bayless*, 70 F.3d 367, 376 (5th Cir. 1995) (citing *Gauthier v. Cont'l Diving Serv. Inc.*, 831 F.2d 559, 561 (5th Cir. 1987)). The other cases merely provide that a criminal defendant may sue the police under the Fourth Amendment. *See, e.g.*, *Martin v. City of Camden*, No. 92-cv-393, 1994 U.S. Dist. LEXIS 6587, at *7–8 (S.D. Ala. Apr. 18, 1994). None of those situations exists here. And neither line of cases says that *Rooker–Feldman* ceases to apply when a state court violates federal law. *See Lennon v. City of Carmel*, 865 F.3d 503, 507 (7th Cir. 2017) ("The *Rooker–Feldman* bar is jurisdictional; violations of it cannot be waived and thus preclude a court from considering the merits of the claim. There is no exception for egregious error.") (citation omitted).

As a result, the *Rooker–Feldman* doctrine prevents this court from reviewing and rejecting the judgments of the Circuit Court of Elmore County.

## V.  CONCLUSION

For the reasons above, it is ORDERED that Defendant Sibley G. Reynolds's motion to dismiss (No. 18-cv-1034, Doc. # 10) is GRANTED.

A separate Final Judgment will be entered.

DONE this 16th day of August, 2019.

_____/s/ W. Keith Watkins_____
UNITED STATES DISTRICT JUDGE